SQUIRE YOUNG, *et al.*, v. SARAH A. WALKER.

ADMINISTRATOR'S DEED, *Valid upon its Face; Ejectment Barred.* Where it was shown in an action of ejectment, that in 1866 an administrator made application to the probate court to sell the real estate of the deceased — which includes the real estate in controversy — to pay the debts of the estate; and that the probate court fixed a day for the hearing of such application; and that notice of such hearing was given, although the notice was probably not given for a sufficient length of time; and the

hearing was had and the sale of the real estate was ordered; and notice of such sale was probably given, though the time was probably one day too short; and the sale was in fact made; and the property was appraised and sold at a fair price and for the amount of the appraisement; and the sale was confirmed by the probate court; and the administrator was ordered to make a deed to the purchaser; and the administrator executed such deed, in pursuance of the order of the probate court; and the deed was duly recorded July 31, 1867; and the plaintiff, who was at that time a minor, became of age May 15, 1873, and then as heir of the deceased, actually received a portion of the proceeds of the sale; and the balance of the proceeds was all properly applied; and this suit, which is an action of ejectment brought by said heir of the deceased, to recover from the purchaser and those holding under him the real estate sold and conveyed by the administrator, was commenced April 25, 1879: *Held,* That such action is barred by the five-years statute of limitations, (Civil Code, § 15, subdiv. 2,) and this although there may be such irregularities in the proceedings of the probate court and of the administrator as would render the administrator's deed void, except for such statute of limitations. And further, *held,* that where the administrator's deed shows upon its face the authority of the administrator from the probate court to sell the real estate of the deceased, and also shows the sale, and the manner in which the property was sold; and the administrator covenants in the deed, among other things, that he has "in all things obeyed the rules and directions of the law in said sale," and there is nothing appearing on the face of the deed which would render it void, the deed is not void upon its face so as to prevent the statute of limitations from running in its favor, although it may not recite all the proceedings of the probate court and of the administrator.

*Error from Allen District Court.*

EJECTMENT, brought by *Sarah A. Walker* against *Squire Young* and two others, to recover the possession of certain lands situate in Allen county. Trial by the court, at the adjourned June Term, 1880, when the court made certain findings of fact, and a conclusion of law thereon, in favor of the plaintiff, and rendered judgment accordingly. The defendants bring the case here. The opinion contains a statement of the facts.

*W. A. Johnson,* for plaintiffs in error.

*G. P. Smith,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This is an action of ejectment for the recovery of real estate, brought by Sarah A. Walker, as heir-at-law of Michael Kizer, her deceased father, and of George Kizer and California Kizer, her two deceased brothers. On the final hearing, the case was tried by the court without a jury, and the court made the following special findings of fact and a conclusion of law, to wit: .

"1st. That James R. Young was the administrator of the estate of Michael Kizer, deceased, appointed by the probate court of Allen county, Kansas, on the 11th day of August, 1865. .

"2d. That on the 10th day of January, 1866, the said administrator presented to said court a petition verified by the said administrator, representing that the personal estate of the deceased was not sufficient to pay his just debts, and asking the court to grant him license to sell as much of the real estate of the deceased as would enable him to pay the same, with the costs attending the same.

"3d. That the said petition did not describe the lands sought to be sold, either by naming the section, township and range, or any portion of either, and did not state the county or state in which such lands are located. .

"4th. That the said petition was not accompanied with an account of the administration, did not contain a list of the debts due to and by the deceased, and was not accompanied with an inventory of the real estate or personal property, or the appraisement of each.

"5th. That, upon the presentation of said petition, the probate court set the same down for hearing on the first Monday in February, and ordered that notice be given as required by law; and that was the only kind of notice ordered by the probate court to be given as to the pendency of such petition.

"6th. That the said administrator thereupon gave notice of the pendency of such petition, and the time of the hearing thereof, by publication in the Humboldt *Union*, or Humboldt *Herald*, and that was the only notice given thereof.

"7th. That, on the 5th day of February, 1866, the probate court issued an order directed to said administrator, requiring him to sell the whole of the real estate of the said deceased at public auction or private sale, agreeably to law.

"8th. That the said order of sale did not describe the lands ordered to be sold, either by naming the section, township or range, or any portion of either, and did not state the county or state in which such lands are located.

"9th. That the said administrator, on the 6th day of April, 1866, reported to the probate court that he had, on the 24th day of February, 1866, sold to J. C. Clark, in obedience to the order of sale, the whole of the real estate of said deceased described in said report, as follows, to wit: West ½ of S. W. ¼ of sec. 28, and E. ½ of S. E. ¼ of sec. 29, in township 28, S., of range 18, east, for the sum of $1,250; and that the sum was the full amount of the appraisement of said land.

"10th. That the said report was indorsed upon the order of sale issued and directed as aforesaid, and contained no further description or location of the land sold than as stated in the next preceding finding.

"11th. That said report was accompanied with an affidavit made by James R. Young, the said administrator, in which he swore, among other things, that he had not directly or indirectly purchased the real estate above described, or any part thereof, or any interest therein, and that he is not interested in the property sold, except as stated in the report.

"12th. That the lands described in finding No. 9 were sold to J. C. Clark for the sum of $1,250; that the said administrator did not directly or indirectly purchase the same; and that he was not interested in the property or its sale, except as administrator and creditor of the estate.

"13th. That the said administrator was a creditor of said decedent to an amount larger than any of the other creditors, and that there were other creditors of said decedent.

"14th. That the only inventory and appraisement of the real estate of the decedent caused to be made by the administrator, was one made on the 9th day of September, 1865, the report of which was filed in the office of the probate court on the 11th day of September, 1865.

"15th. That the inventory and appraisement mentioned above described the real estate in the same manner as is stated in finding No. 9, and contains no further description or location thereof than is therein mentioned.

"16th. That the said administrator disposed of the money received from such sale by first paying the debts of the estate and costs of administration, and then paying the residue to the heirs according to their respective shares.

"17th. That the plaintiff received her proportion thereof,

but did not know that the money received by her was a part of the proceeds of such sale, and did not know that the land had been sold.

"18th. That the said James R. Young was the duly appointed guardian of the minor children of Michael Kizer, including the plaintiff herein, and that he was appointed as such guardian on the —— day of ————, 1864.

"19th. That the sale of said lands made by the said administrator as aforesaid was confirmed by the probate court on the —— day of ————, 1866.

"20th. That the said administrator executed a deed to the said purchaser, the recitals of which as to the proceedings authorizing its execution, and the description of lands therein, are as follows:

"'To all persons to whom these presents shall come: I, James R. Young, administrator of the goods and chattels and estate which were of Michael Kizer, late of Allen county, state of Kansas, deceased, intestate, send greeting: Whereas, the Hon. probate court for the county of Allen, at a session thereof holden at Iola, in said county, on the 5th day of February, A.D. 1866, on application for that purpose, did license and authorize me to sell, at public auction or private sale, all the real estate of the said deceased, for the payment of the said debts of the said deceased, with incidental charges; and in obedience to said license, I sold the real estate hereinafter described, at private sale, to J. C. Clark, of Allen county, Kansas, for the sum of twelve hundred and fifty dollars.

"'Now know ye, that pursuant to the license and authority aforesaid, and not otherwise, and in consideration of the sum of twelve hundred and fifty dollars aforesaid, the receipt whereof I do hereby acknowledge, I do by these presents grant, bargain, sell and convey unto the said J. C. Clark, his heirs and assigns, a parcel of land, situate in the county of Allen and state of Kansas, and bounded and described as follows, to wit: the west half of the southwest quarter of section twenty-eight, and the east half of the southeast quarter of section twenty-nine, all in township twenty-four, south, of range eighteen, east, containing one hundred and sixty acres, more or less, being all the real estate in Allen county whereof the said Michael Kizer died seized.'

"The said deed was filed for record and recorded in the office of the register of deeds of Allen county, Kansas, on the —— day of ————, 1866.

"21st. That the said J. C. Clark executed a deed of conveyance of the said lands to the defendant Squire Young, and that the defendant Julius Young now occupies and holds the same as a tenant of the said J. R. Young.

"22d. That at the death of Michael Kizer, he left surviving him the following children as his sole surviving heirs-at-law: Sarah A. Kizer, George Kizer, and California Kizer; that George Kizer and California Kizer have both died, and left their said sister Sarah A. Kizer their sole surviving heir-at-law; that the said Sarah A. Kizer has intermarried with

one W. T. Walker, and that her name is now Sarah A. Walker; and that Michael Kizer died seized of the west half of the southwest quarter of section 28, and the east half of the southeast quarter of section 29, all in township 24, range 18, in Allen county, and state of Kansas.

"23d. That at the time the lands were sold as aforesaid, the oldest was —— and the youngest —— years of age. That the premises of which Michael Kizer died seized, and referred to in the last preceding finding, were at the time of said sale occupied by ——.

"24th. That Michael Kizer left the place in controversy in the charge of his children, in the fall of 1863 or 1864, because he feared some personal injury from several enemies; that he intended to return to the same as soon as the difficulty which induced him to leave was settled or compromised; that he died in the year ——; that he had not yet returned to the place; that his children were removed from the place by a neighbor within a few days after Kizer left, and never thereafter returned to it for occupancy; that the neighbor who removed the children did so under the direction of their father, Michael Kizer, just before he left.

"25th. That the heirs of Michael Kizer, hereinbefore mentioned, each received his or her distributive share of the proceeds of said sale after they attained the years of majority; that neither of them has ever paid back or offered to refund the same; and the said George and California Kizer died after they received such distributive share of said proceeds.

"26th. That the rental value of the land in controversy was $65 per year."

And as a conclusion of law, the court finds:

"That the plaintiff is entitled to judgment against the defendants."

Upon these findings, the court below rendered judgment in favor of the plaintiff and against the defendants, for the recovery of the real estate in controversy; and also for $271.82, damages, and $91.98, costs. The defendants claim that this judgment is erroneous, and as plaintiffs in error now ask for a reversal of the same by this court.

We think the findings of the court below are sustained by sufficient evidence. It is true that with reference to some of the facts, the court might have found differently, and per-

haps ought to have found differently; but still there was some evidence, and we think sufficient evidence, to sustain all the findings as made by the court below. The only question, then, is, whether the findings actually made by the court below will sustain the judgment rendered upon them. It will be noticed that the title of the defendants below to the property in controversy is founded solely upon an administrator's deed; and therefore the real question to be determined is, whether under all the circumstances, the administrator's deed is valid or not. The plaintiff below claims that it is invalid for various reasons — first, because it does not, as she claims, recite "the certificate of appraisement and advertisement, the time and place of sale, or report the proceedings" of the probate court or of the administrator, as required by § 141, ch. 91 of the Compiled Laws of 1862, pp. 532, 533, and she also refers to §§ 136, 138, 139 of said chapter; second, because, as she claims, the records of the probate court, with the other evidence introduced on the trial, show that the notices of the hearing of the application for the sale of the real estate in controversy, and also the notices of the sale itself, were not given for a sufficient length of time; that neither the application for the order to sell the real estate, nor the order itself, describes the property to be sold; but that the application simply asked "to sell so much of the real estate of the said deceased as will enable the administrator to pay the just debts of the deceased;" and the order simply authorized the administrator "to sell the whole of the real estate of the deceased;" that the probate court did not exercise its discretion in ordering or designating which of the two ways, authorized by § 131 of said chapter 91, the notice of the hearing of the application for the sale of the real estate of the deceased should be given, but simply ordered "that due notice should be given as required by law."

On the other hand, the defendants below claim that the administrator's deed is valid; that it is valid upon its face; and that the proceedings of the probate court and of the administrator were sufficiently regular to make it valid, even if

it had been attacked when first executed and by a direct proceeding. And they further claim that at this time, and in this collateral proceeding, it must be held valid beyond all question. They claim that after the sale has been made, and after the plaintiff and the persons under whom she claims have received full payment for the property, she cannot now repudiate such sale and payment; and that without refunding, or offering to refund, any of the money which she and the persons under whom she claims received for the property, she cannot now recover the property. It must be remembered that the sale was made about February 24, 1866; that the property was sold for $1,250; that that was a fair price for the property, and was all that the property was appraised at; that a portion of the proceeds of the sale was paid directly to the plaintiff, and that she has not refunded or offered to refund any portion of the same to the purchasers, or to any one else. The defendants also claim that the five-years statute of limitations (Civil Code, § 16, subdiv. 2) has run in favor of the administrator's deed, making such deed valid, if it was not valid before, and thereby barring all action in favor of the plaintiff for the recovery of the property.

We shall first consider the question whether the statute of limitations has run in favor of the administrator's deed, and barred any action which the plaintiff might otherwise have had for the recovery of the property; for if we decide that question in favor of the defendants, it will not be necessary to consider any of the other questions separately. That question, however, involves a discussion of some of the other questions.

We shall assume for the purposes of the case, that, except for the statute of limitations, the administrator's deed would be void. We shall assume for the purposes of the case, that the irregularities in the proceedings of the probate court, and of the administrator, are sufficient to render the administrator's deed void in any action or proceeding that might have been commenced before the statute of limitations had completely run, and this whether the deed was attacked directly

or collaterally; and with such assumptions, we shall proceed to a discussion of the question, whether the statute of limitations has in fact so run as to make the deed valid.  Of course the statute of limitations must have some use.  It was not enacted for the purpose of curing administrators' deeds which were already good.  It was really enacted for the purpose of curing administrators' deeds which would otherwise be void; and whether it will so apply as to cure the present deed, and make it valid, we shall now proceed to consider.  If it will, it will certainly do justice in the present case; it will prevent the plaintiff from perpetrating a villainous wrong; it will prevent her, after she and the persons under whom she claims have received full payment for the property, from then repudiating such payment, and recovering the property; and it will give the property to the defendants, who purchased it in good faith, and paid a fair price for it, and have held possession of it for several years.

We think the statute of limitations has cured the deed, and made it valid.  An application was in fact made by the administrator to the probate court to sell the real estate of the deceased to pay the debts chargeable against his estate.  A hearing of such application was ordered by the probate court, and the time was fixed for such hearing.  Notice of the hearing was in fact given, although the notice was perhaps not given for a sufficient length of time; the hearing was had; the sale was ordered; notice of the sale was probably given, though the time was probably one day too short; the sale was in fact made; the property was appraised, and was sold at a fair price, and for the amount of the appraisement; the sale was confirmed by the probate court, and the deed was ordered to be made to the purchaser; the proceeds of the sale were properly applied; a deed was duly made and executed, in pursuance of the order of the probate court, the administrator covenanting therein, among other things, that he had "in all things obeyed the rules and directions of the law in the said sale;" the deed was duly recorded July 31, 1867; the plaintiff became of age May 15,

*Administrator's deed, valid; ejectment, barred.*

1873, and then actually received a portion of the proceeds of the sale; and this suit was commenced April 25, 1879. It therefore seems that the statute of limitations had so run as to bar the plaintiff's right of recovery. It is true that there were irregularities in the proceedings of the probate court and of the administrator; but the statute of limitations was unquestionably enacted for the purpose of curing irregularities. If everything was regular, there would be no need of any statute of limitations. If the administrator's deed was valid without such statute, then there would be no need of the statute. Therefore it is evident that the statute was enacted for the purpose of curing administrators' deeds which would otherwise be void. It is true that the administrator's deed in the present case, if considered with reference to § 141 of chapter 91 of the Compiled Laws of 1862, is to some extent irregular and informal; but still there is nothing on the face of the deed which renders it void, or shows it to be void. There is nothing on its face that shows that any of the proceedings of the probate court or of the administrator were irregular, and void. So far as the face of the deed is concerned, everything prior to the execution of the deed may have been regular, and valid; and the administrator covenanted in the deed, among other things, that he had "in all things obeyed the rules and directions of the law in said sale."

But the regularity or validity of the administrator's deed is not now to be governed wholly by the Compiled Laws of 1862. It is now governed and has been since June 20, 1872, by the General Statutes of 1868, and by chapter 127 of the Laws of 1872, (Comp. Laws of 1879, pp. 425, 426, §§ 132, 133, and 133a; *Sanders v. Greenstreet*, 23 Kas. 425;) as well as by the Compiled Laws of 1862; and under the General Statutes of 1868 and the Laws of 1872, the administrator's deed is perfectly valid upon its face.

The judgment of the court below will be reversed, and the cause remanded with the order that judgment be rendered in favor of the defendants below.

All the Justices concurring.