No. 36,255

CARL SCHLEMEYER, *Appellee,* v. SARAH J. BUNKER MELLENCAMP et al., *Appellants.*

(156 P. 2d 879)

Opinion filed March 10, 1945.

W. S. Langmade, Wallace T. Wolfe, both of Oberlin, and W. H. Clark, of Hoxie, were on the briefs for the appellants.

J. B. Patterson, of Wichita, argued the cause, and W. L. Sayers, of Hill City, A. W. Hershberger, Enos E. Hook, R. E. Kirkpatrick, and Richard Jones, all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

Hoch, J.: This was an action to quiet title to real estate. Plaintiff's motion for judgment upon the pleadings was sustained and defendants appeal. The issues here turn upon construction and effect of a certain deed and upon the statutes of limitation.

A motion for judgment on the pleadings, like a demurrer, admits all facts well pleaded by the opposing party; assumes no disagreement as to material facts, and should not be sustained unless it clearly appears that the admitted facts entitle the party making the motion to judgment. (49 C. J. 668-670; Northington v. Northington, 158 Kan. 641, 642, 149 P. 2d 622 and recent cases cited; Ferguson v. Petersime Incubator Co., 146 Kan. 815, 818, 73 P. 2d 1026; Ryan v. Ryan, 156 Kan. 348, 133 P. 2d 119; James v. Metropolitan Life Ins. Co., 155 Kan. 377, 125 P. 2d 369.) Accordingly, we consider the instant contentions of the parties in the light of the material facts alleged by the defendants or alleged by the plaintiff and not denied by the defendants.

The plaintiff, Schlemeyer, was record holder of title to certain described land in Sheridan county and had been in actual and peaceable possession for more than five years. Among the defendants there are three with whose interests we are here concerned. They are Lydia Mellencamp Terry, George Gale Mellencamp, and John Dale Mellencamp, daughter and sons of Sarah J. Bunker Mellencamp and W. D. Mellencamp, both deceased. They base their claim on a warranty deed executed on October 8, 1920, the grantors being John J. Trew and wife and the grantees being "Sarah J. Bunker Mellencamp and her children, of Sheridan county in the State of Kansas." No question is raised as to other provisions of the deed and they need not be noted.

At the time the deed was given Sarah Mellencamp had one child, Lydia Mellencamp, then about five years of age. About five years later, in 1925, twins were born, George Gale and John Dale Mellencamp. In 1926 Sarah Mellencamp and her husband, W. D. Mellencamp, signed a note to the Morland State Bank secured by mortgage

upon the land here involved. The note was signed by "Sarah Mellencamp and her husband" and the mortgage was signed by "Sarah Mellencamp, Sarah Mellencamp, Guardian, and W. D. Mellencamp." When the note and mortgage were given Sarah Mellencamp had not been legally appointed guardian of her children. In a proceeding in Russell county in 1929 Sarah Mellencamp was appointed guardian of her three minor children and under order of the court sold the minors' interest in the Sheridan county land, subject to the mortgage, to a man named Coltrin. The guardian's deed was duly approved by the court. In August, 1935, the bank foreclosed the mortgage. The land was bid in by the bank, the mortgagee, and subsequently sold to Schlemeyer, the appellee.

Appellants say that the guardian's deed was invalid because their mother, Sarah Mellencamp, had not been legally named as guardian; that they were not residents of Russell county, in which the guardianship proceedings were had; that service was not sufficient; and allege generally that the giving of the note and mortgage and the proceedings for appointment of a guardian and the order for a guardian's deed were all part of a conspiracy between their mother, the bank, and Coltrin. In her answer Lydia Mellencamp Terry alleges that the first knowledge she had concerning the matters just recited was in December, 1943. The other two appellants were not of age when this action was instituted and a guardian *ad litem* was appointed to represent them. In his answer the guardian *ad litem* alleges that W. D. Mellencamp had died prior to 1929 and that when the guardian's deed was executed by Sarah Mellencamp in 1929 she was of unsound mind and that Coltrin knew of her condition at that time. Other allegations not material to determination of the questions before us need not be narrated.

Appellee contends that under the deed of October 8, 1920, to "Sarah J. Bunker Mellencamp and her children" no interest in the land was ever vested in the two children, George Gale and John Dale, since they were not born until about five years after the deed was executed; also that any claim that they or Lydia Mellencamp Terry may have had is barred by the five-year statute of limitations (G. S. 1935, 60-304, *first* and *second*).

He contends further that even if the statute is not a bar to the claim of Lydia Mellencamp Terry her claim is barred under the equitable doctrine of laches, inasmuch as she asserted no claim until about eight years after she became of age.

We first consider the claim of the after-born children, George Gale and John Dale Mellencamp. Did any interest vest in them under the conveyance of 1920 to "Sarah J. Bunker Mellencamp and her children"?

Had the deed been executed subsequent to July. 1, 1939, Sarah Mellencamp would have taken a life interest, with remainder to "her children," under the provisions of G. S. 1943 Supp. 58-505. Whether under that statute only children *in esse* would have taken as remaindermen we need not consider. The instant deed must be considered under the law existing prior to July 1, 1939.

It is stated as a general rule, in 26 C. J. S. 424, 425, that "under a deed to one and his children, whether the children take a present interest with their parent or a remainder interest depends on the grantor's intent"; and that "under the construction that the children take a present interest with their parent, children born after the delivery of the deed take no interest." (See, also, 16 Am. Jur. 478, 582; Restatement, Property, Future Interests, 1483, ¶ 283(a).) There was nothing in the instant deed to indicate that the grantor did not intend to vest the grantees with a present interest. In *Moherman v. Anthony,* 106 Kan. 457, 459, 460, 188 Pac. 434, the deed was to "Belle P. Moherman, and her children, . . . to have and to hold the same with the appurtenances unto the said Belle P. Moherman, for and during her natural life only, and upon her death then to her children in equal shares, their heirs and assigns forever." In spite of the provision in that deed as to a life estate in the mother —and there is no such provision in the instant deed—it was said:

"The habendum clause that plaintiff was 'to have and to hold the same (land) . . . during her natural life only, and upon her death then to her children, . . . their heirs and assigns forever,' and 'if any of the children of said Belle P. Moherman should die before their said mother, then the share of such deceased child shall vest in his or her lawful heirs,' does not take away the title immediately conveyed to the children. The clause can be harmonized with the granting clause, and the evident intention of the instrument was to convey an undivided one-fifth interest to the plaintiff and an undivided four-fifths interest to the four children subject to a life estate in their mother." (Citing cases) (p. 460.)

The opinion in the Moherman case quotes from 1 Jones on The Law of Real Property in Conveyancing, ¶ 233, as follows:

"A deed to a person named *'and her children'* is not void as to the mother or her children living at the time the deed was made. Such children can be identified by parol evidence, and they and their mother take the title as tenants in common, *but children subsequently born take no title.* If in such

case the grantee named has no children at the time of the execution of the deed, such grantee takes the entire property to the exclusion of children born subsequently to the execution of the deed." (Italics supplied). (p. 460.)

Under the deed in question title vested solely in Sarah Mellencamp and her children then living. This being true, we need not consider other contentions made in behalf of appellants, George Gale Mellencamp and John Dale Mellencamp, as they were not born until five years after the deed was executed.

We now consider the claim of Lydia Mellencamp Terry. She was five years old when the deed was executed, and became of age in 1936. Appellee contends that her claim is barred both under paragraphs *first* and *second* of section 60-304, G. S. 1935, which read:

"*First*. An action for the recovery of real property sold on execution, brought by the execution debtor, his heirs, or any person claiming under him, by title acquired, after the date of the judgment, within five years after the date of the recording of the deed made in pursuance of the sale.

"*Second*. An action for the recovery of real property sold by executors, administrators or guardians, upon an order or judgment of a court directing such sale, brought by the heirs or devisees of the deceased person, or the ward or his guardian, or any person claiming under any or either of them, by the title acquired after the date of the judgment or order, within five years after the date of the recording of the deed made in pursuance of the sale."

Appellee bases his argument upon the guardian's deed which was executed in 1929 and which he says was placed of record in Sheridan county on July 27, 1929. He says that the recording of the deed constituted notice to her and that her right of action, if any, to set it aside was barred not later than two years after she became of age, or in 1938. (G. S. 1935, 60-305.) The trouble about this is that we do not find that it is admitted in the pleadings that the guardian's deed was recorded in Sheridan county on July 27, 1929, or on any other date.

In her answer Lydia Mellencamp did not admit the recording of the deed. The petition contained no allegation on the point. In her anwer she submitted as an exhibit a copy of the deed given by Coltrin to Sarah Mellencamp to certain land in Russell county said to have been given as part of the deal between them under which she transferred to him the land in Sheridan county. But the deed to the Sheridan county land here involved is not shown, nor is it shown when, if ever, it was recorded. It is only from the date of the recording of the deed that the statute of limitations starts to run. (60-304, *supra*.)

In an amended answer of the guardian *ad litem* filed subsequent to the answer of Lydia Mellencamp it is stated that the guardian's deed "is recorded in Deed Records 72 at page 189 in the office of the Register of Deeds of Sheridan county, Kansas"; but this does not fix the time when the deed was so recorded nor in any event would it determine the issue before us as between the plaintiff and Lydia Mellencamp.

Although appellee does not urge the contention that the statute started to run against Lydia Mellencamp by virtue òf the mortgage foreclosure proceedings in 1935, we have considered the question. And again we find the same defect. Nowhere is it shown in the pleadings when, if ever, a sheriff's deed in the foreclosure proceedings was recorded in Sheridan county. The foreclosure proceedings are referred to in the answer of Lydia Mellencamp Terry and the abstract contains a statement that a decree of confirmation was filed on December 11, 1935. But the essential fact, namely, the recording of the deed, which alone starts the running of the statute, is not shown as far as we have been able to discover. What, if any, concessions not shown by the pleadings may have been made in the court below we do not know. We can only be concerned, on the issue before us, with what appears in the pleadings. Since the pleadings do not disclose, as between appellee and appellant Lydia Mellencamp Terry, when, if ever, either the guardain's deed, or a sheriff's deed in the mortgage foreclosure action was recorded, we cannot say that her claim is barred by the statute of limitations.

Appellee next contends that even if appellant is not barred by the statute of limitations she is barred under the doctrine of laches. Laches being an equitable doctrine, the general rule is that it must be pleaded (49 C. J. 194). However, we have held—as many courts have held—that the issue of laches may be raised by demurrer. (49 C. J. 421, 422; *Howe v. City of Florence,* 121 Kan. 202, 203, 246 Pac. 510.) Mere lapse of time, however, is ordinarily not the only factor to be considered, and laches must affirmatively or clearly appear from all the facts and circumstances admitted in order to make a pleading demurrable. (*City of Osawatomie v. Miami County Comm'rs,* 153 Kan. 332, 336, 337, 110 P. 2d 748, and cases cited; *Varrois v. Gommet,* 43 Cal. App. 756, 185 Pac. 1001.) The same rule would apply to the motion for judgment on the pleadings.

Appellee says that appellant slept on her rights from 1929 until 1944 and made no effort to recover the property until after its value

had been enhanced by oil development. Again, we have trouble in finding such facts from the pleadings. In her answer appellant takes note of the guardianship proceedings had in Russell county in 1929 and of the foreclosure action in Sheridan county in 1935, but asserts that all such proceedings were instituted as part of a conspiracy to defraud her and that she had no knowledge of either proceeding until in December, 1943. The record does not disclose that plaintiff filed a reply. Appellant asserts that she was not personally served with summons in the foreclosure proceedings, that service was defective under the statute, and contends that the judgment of foreclosure was void. We need not go into that question. Unless constructive notice as of a prior date can be charged against her she would appear to have—on the allegation of her answer—two years from December, 1943, in which to assert claim for relief on the ground of fraud. G. S. 1935, 60-306, *third; Foy v. Greenwade*, 111 Kan. 111, 117, 118, 206 Pac. 332.)

For reasons heretofore stated the five-year limitation (G. S. 1935, 60-304, *first* and *second*) cannot be successfully invoked under the pleadings in support of the motion for judgment. Section 60-304, *fourth*, which prescribes a fifteen-year limitation upon actions for the recovery of real property not provided for in the preceding paragraphs, does not specifically refer to the recording of an adverse conveyance. But appellee makes no contention that a fifteen-year period had run against appellant. However, we are not here determining any of these incidental questions. We are only saying that it does not clearly and affirmatively appear on the face of the pleadings that appellant is chargeable with laches.

The conclusions above stated determine the result of this appeal. We think it advisable, however, in the interest of all parties concerned, to consider briefly one other contention stressed by appellant. She urges, as heretofore noted, that by virtue of certain irregularities in the guardianship proceedings and in the foreclosure action both the guardian's deed and the sheriff's deed were void, and being void the recording of such deeds constituted no constructive notice to her and did not start the running of the statute against her.

We shall here consider the question only as it relates to the guardian's deed, and for present purposes shall assume that it was recorded in Sheridan county on July 27, 1929, as stated in appellee's brief— a fact neither admitted nor denied by appellant. It thus appears that the deed was recorded about seven years before appellant be-

came of age and about fourteen years before she asserted her claim in this action.

The record discloses that Sarah Mellencamp filed her verified petition in the probate court of Russell county asking appointment as guardian of her daugher Lydia, then fourteen years old; that the petition shows what purports to be the signature of Lydia, consenting to such appointment; that an order of appointment was made; bond was given, and oath taken by both principal and sureties; that notice of such appointment and bond was given; that a verified petition to sell the ward's real estate interests in Sheridan county was filed; that the court ordered notice to the minors to be given; that notice was given and verified return filed showing personal service; that order to sell was entered; that bond of guardian with sureties was given; that appraisers were named, appraisement made and reported to the court; that sale was made and confirmed by the court; that deed was executed by the guardian under order of the court, and was approved.

Appellant asserts that the guardianship proceedings were irregular in various particulars. She does not deny that the guardianship proceedings summarized above were had or that a guardian's deed was executed by her mother therein named as her guardian. In fact, she asserts that such proceedings were had and a guardian's deed executed as part of a conspiracy against her by her mother and others. Upon such a state of facts the law is well established in this state that the five-year statute of limitations applies. The leading case in point is *O'Keefe v. Behrens,* 73 Kan. 469, 85 Pac. 555. Although that case had to do with an administrator's deed instead of a guardian's deed it involved the same statute (60-304, *second*) and what was there said is equally applicable here. The contentions here made were fully considered in the opinion in the Behrens case and we need not again go over the ground. In the opinion it was said:

"It is to be conceded that whatever is placed of record must be capable of description as an administrator's deed or the statute will not be set in motion. It must also be tested by what appears upon its face. But if it can be said from what appears there that it fairly complies with the law it will be sufficient, although informal and irregular. Such deed must also be made pursuant to an order or judgment directing a sale. The court must have acted, and what it did must be of a character to make it identifiable as an order or judgment. A forged order would not be an order of a court any more than a forged deed would be a deed made pursuant to an order or judgment. If upon appeal an order of sale should be set aside, or if the enforcement of the order should

be permanently enjoined, no deed could be made pursuant to it. Other circumstances might be suggested under which something in the form of an order or a deed would not be such. But after an administrator's deed made pursuant to an order or judgment of the proper court directing a sale has been placed of record heirs must sue to recover the property within five years, or be deemed to have admitted the validity of the sale and conveyance, whether they had notice of the proceedings or not. After the expiration of that time the purchaser cannot be called upon to vindicate their legality." (p. 474.)

(See, also, *James v. Logan*, 82 Kan. 285, 108 Pac. 81; *Spradling v. Hawk*, 133 Kan. 545, 550, 1 P. 2d 268; *Erskine v. Dykes*, 158 Kan. 788, 792, 150 P. 2d 322.)

Appellant relies principally upon *Harrison v. Miller*, 87 Kan. 48, 123 Pac. 854, wherein it was held that the statute here involved does not apply to the recording of a deed purported to have been executed by a guardian when in fact no guardian had been appointed. The distinction between such a situation and the one here presented is obvious. In fact, what was said in the opinion in the Miller case clearly recognizes the distinction between a case where an appointment of a guardian—regular on its face—has been made, and one where no such appointment has been made. In order for there to be a guardian's deed there must be the appointment of a guardian. But such appointment—regular on its face—having been made, irregularities in the proceedings cannot be set up in a collateral attack to avoid the effect of the statute of limitations. To permit that to be done would defeat one of the very purposes of such statutes.

The judgment sustaining the motion of plaintiff for judgment on the pleadings must be reversed as to Lydia Mellencamp Terry and sustained as to the other appellants. It is so ordered.